# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

TOMMICUS A. JOYCE,                )
                                  )
    Plaintiff,          )
                                  )
v.                                )   Case No.  CV405-078
                                  )
MARTY ADAMS,                      )
                                  )
    Defendant.          )

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

## REPORT AND RECOMMENDATION

Defendant has filed a motion for summary judgment.  Docs. 49, 50.

Plaintiff has responded in opposition, and defendant has replied.  Docs.

59, 76.  For the following reasons, defendant's motion should be

GRANTED and this action should be DISMISSED.

## I.  Background

On May 12, 1998, two men were murdered in Liberty County,

Georgia.  Doc. 49, ¶ 1; doc. 60, ¶ 1.  The joint investigation by the Liberty

County Sheriff's Department and Georgia Bureau of Investigation (GBI)

focused on two suspects: Sean Stewart and Keiotta Tubbs.  Doc. 49, ¶ 5;

doc. 60, ¶¶ 2, 25. The GBI did not have any photographs of suspect Tubbs, so in January of 1999 an agent contacted the Coffee County (Tennessee) Sheriff's Department, an agency known to have photographed Tubbs. Doc. 60, ¶ 26. A member of that sheriff's department advised the GBI that he would create a photographic line-up using the photograph of Tubbs and five other randomly selected photographs of African-American males. Id. The line-up included a photograph of plaintiff, who had been arrested for speeding and driving on a suspended license but was not considered a part of the murder investigation. Id., ¶ 27. The Tennessee sheriff's department sent the line-up to defendant Marty Adams, id., ¶ 26, who was acting as lead detective for the Liberty County Sheriff's Department. Id., ¶ 16.

Defendant testified that Natalie Strodder, who was not present at the scene of the murders, picked plaintiff's picture out of the line-up and told him that she saw this person with Stewart at a drug deal with one of the victims a couple of weeks prior to the murder.[1] Adams Dep., at 86-87. When defendant advised GBI Agent Crowell that "a witness in the case" had selected plaintiff's photograph, doc. 60, ¶ 45, Agent Crowell

---

[1]Strodder denies picking out plaintiff's picture. Doc. 60, Ex. D (Strodder Aff.).

attempted to find a connection between plaintiff and Stewart but found none. Id., ¶ 49. Agent Crowell also determined that plaintiff had no Georgia criminal history. Id., ¶ 48. Furthermore, none of the witnesses positively identified plaintiff as being at the scene. Id., ¶¶ 29, 61, 63, 64.

Defendant arrested Stewart on September 13, 2000. Id., ¶ 65. Stewart admitted that he, Tubbs, a man named Chris Hanna, and a fourth man known only as "Justice" had gone to a victim's house to rob him. Id. Stewart then identified photographs of himself, Tubbs, and Hanna, but did not identify plaintiff and stated that "Justice" was not in the line-up. Id. Defendant subsequently arrested Chris Hanna. Id., ¶ 66. Hanna admitted to driving to Liberty County with Stewart, Tubbs, and a fourth accomplice named "Rico," whom he described as "6 feet, works out a little bit, light brown skin, [with] braids." Id., ¶ 67. Hanna then identified photographs of himself, Tubbs, and Stewart, but he did not recognize anyone else from the line-up and did not identify plaintiff. Id., ¶¶ 69, 70. During a second interview, Stewart described the fourth suspect as a 6'2" light-skinned, muscular "big guy" from "up north" who had a tattoo and was wearing braids and no jewelry. Id., ¶ 72; Doc. 64, Ex. 4, at 16.

Later, the assistant district attorney offered to remove the prospect of the death penalty if Hanna and Stewart would identify the fourth accomplice. Id., ¶ 71. Hanna and Stewart then identified plaintiff's photograph as that of the fourth accomplice. Id., ¶ 86.

In November of 2001, based on the identifications of Strodder, Hanna, and Stewart, defendant sought and obtained two warrants for plaintiff's arrest. Id., ¶¶ 94, 95. On November 27, 2001, plaintiff was arrested for the two Liberty County murders. Id., ¶ 99. Plaintiff alleges that on January 18, 2002, defendant offered false testimony at a preliminary hearing to support plaintiff's arrest. Doc. 1; doc. 60, ¶ 101.

In 2003, the Liberty County district attorney's office and defendant interviewed a man who told them that the fourth accomplice was an individual named Terrance Taylor. Id., ¶¶107-109. On August 1, 2003, the charges against plaintiff were dismissed *nolle prosequi*. Id., ¶ 112.

Plaintiff has brought a claim pursuant to 42 U.S.C. § 1983 alleging that defendant is liable under a number of theories, including false arrest, false imprisonment, malicious prosecution, violation plaintiff's Fourteenth Amendment right to due process, and conspiracy. Doc. 1.

## II.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

## III. Analysis

### A. Timeliness

Defendant contends that plaintiff's § 1983 claim for false arrest/imprisonment[2] is untimely because plaintiff waited over three years from the date of his preliminary/bond hearing to file this action. Doc. 50; see Wallace v. Kato, 127 S. Ct. 1091, 1096 (2007) (holding that the statute of limitations for a false arrest/false imprisonment claim begins to run "when the alleged false imprisonment ends . . . once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges"); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986) ("the proper limitations period for all section 1983 claims in Georgia is the two-year period set forth in O.C.G.A. § 9-3-33 for personal injuries"). Plaintiff argues that because defendant falsely swore out the warrant for his arrest and gave false testimony to the grand jury, the arrest warrant and indictment were void, and thus he was never detained pursuant to *legal* process. Doc. 1, 59. Therefore, plaintiff argues, the statute of limitations for his false arrest claim did not begin to run until he was released from his incarceration. Doc. 59. Defendant contends, however, that the legal

---

[2]The Court in Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007), held that false arrest "is a species" of false imprisonment, and thus they overlap.

process was not void for the purposes of triggering the statute of limitations. Doc. 76.

The parties' focus on the timeliness of a false arrest claim and validity of the arrest warrant and indictment is misdirected, as the facts alleged by plaintiff state a claim of malicious prosecution and not false arrest. The Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), noted the distinction between a common law malicious prosecution claim and false arrest claim:

> The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here[3] because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment, but not more."

<u>Heck</u>, 512 U.S. at 484 (citation omitted); <u>see</u> <u>Wallace</u>, 127 S. Ct. at 1096 (false imprisonment [or arrest] involves detention *"without legal process,"* and ends once the victim becomes held pursuant to such process, whereas "the 'entirely distinct' tort of malicious prosecution . . .

---

[3]The petitioner in <u>Heck</u> asserted that prosecutors and investigators conducted an unreasonable and arbitrary investigation leading up to his arrest, knowingly destroyed evidence that was exculpatory in nature, and caused an illegal and unlawful voice identification procedure to be used at trial.

remedies detention accompanied . . . by *wrongful institution* of legal process.").

Here, it is undisputed that defendant secured an arrest warrant prior to taking plaintiff into custody. Following the Court's lead in Heck, this Circuit has held that a Fourth Amendment unreasonable seizure claim is most closely analogous to the common law tort of malicious prosecution when the seizure involves obtaining an arrest warrant or is otherwise pursuant to legal process. Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996); see also Kelly v. Curtis, 21 F.3d 1544, 1553-54 (11th Cir. 1994) (treating as malicious prosecution claim an allegation that detectives should have known that affidavit for arrest warrant failed to establish probable cause). "In contrast, where an arrest is made before the commencement of a criminal proceeding, the most analogous tort might be that of 'false arrest.'" Whiting, 85 F.3d at 585 n.8.

Other circuit courts have drawn the same distinction between a § 1983 false arrest claim and a § 1983 malicious prosecution claim. See, e.g., Calero-Colon v. Betancourt-Lebron, 68 F.3d 1 (1st Cir. 1995); Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996); Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892 (7th Cir. 2001).

The First Circuit has observed that "[t]he interest at stake in a malicious prosecution claim is the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures. In contrast, false arrests infringe upon the right to be free from restraints on bodily movement." Calero-Colon, 68 F.3d at 3-4. Thus, "[t]he critical inquiry that distinguishes malicious prosecution from false arrest in the present context is whether the arrests were made pursuant to a warrant." Id. at 4 (citation omitted). "An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process." Id. Regardless of the validity of the warrant, plaintiff's allegations support a § 1983 malicious prosecution claim rather than a § 1983 false arrest claim. Because plaintiff was arrested pursuant to a warrant, his claims of false arrest and false imprisonment must be DISMISSED.

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003); see Uboh v. Reno, 141 F.3d 1000, 1002-04 (11th Cir. 1998);

<u>Whiting</u>, 85 F.3d at 585.[4]  A claim for malicious prosecution does not accrue until the criminal proceedings terminate in plaintiff's favor. <u>Uboh</u>, 141 F.3d at 1004; <u>Kelly v. Serna</u>, 87 F.3d 1235, 1239 (11th Cir. 1996).  "[W]here a section 1983 plaintiff is seized following the institution of a prosecution (for example, after a warrant has been issued for arrest . . .) and he seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable."  <u>Whiting</u>, 85 F.3d at 585-86.  As the prosecution against plaintiff terminated on August 1, 2003, this § 1983 action for malicious prosecution, filed on May 13, 2005, is timely.

## B.    **Immunity**

Plaintiff alleges that defendant is liable for malicious prosecution because he deliberately or recklessly omitted material facts from the warrant affidavit and in his testimony at the preliminary and grand jury

---

[4]The Supreme Court has "never explored the contours of a *Fourth Amendment* malicious-prosecution suit under § 1983," <u>Wallace</u>, 127 S. Ct. at 1096 n.2, and has noted that "the extent to which a claim of malicious prosecution is actionable under § 1983 is one 'on which there is an embarrassing diversity of judicial opinion', . . . [although] [m]ost of the lower courts recognize some form of malicious prosecution action under § 1983." <u>Albright v. Oliver</u>, 510 U.S. 266, 270 n.4 (1994).

hearings. Doc. 59. Defendant contends that he is entitled to absolute and qualified immunity from all liability arising from the warrant applications and judicial testimony. Doc. 50.

### 1. **Warrant Affidavit**

Defendant is not entitled to absolute immunity from plaintiff's allegation that he lacked probable cause to apply for an arrest warrant, but he may be entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 343 (1986) ("In the case of the officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity."). Qualified immunity shields government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine of qualified immunity "'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Hope, 536 U.S. at 739 (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)).

For government officials to be entitled to qualified immunity, they must show that they were acting within the scope of their discretionary authority when the alleged unconstitutional act occurred. Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003); Vinyard v. Wilson, 311 F.3d 1340, 1346 (2002). Once government officials have established that they were acting within the scope of their discretionary authority, the burden then shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. Vinyard, 311 F.3d at 1346. The Supreme Court has established a two–part analysis for making this determination. Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citing Saucier, 533 U.S. at 201). Viewing the facts in the light most favorable to the plaintiff, the Court must first determine whether defendant's conduct violated a constitutional right. Id. If a violation of a constitutional right is sufficiently alleged in the complaint, the court must then assess whether that right was clearly established at the time of the violation. Id.

Defendant was clearly acting within his discretionary authority when he applied for the arrest warrants, so the remaining issue is whether his actions violated clearly established constitutional law.

"[O]nly where the warrant [affidavit] is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley, 475 U.S. at 344-45 (citations omitted). According to the Malley Court, the determinative question:

> is whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant. If such was the case, the officer's application for a warrant was not objectively unreasonable, because it created the unnecessary danger of an unlawful arrest.

Id. at 344. In Garmon v. Lumpkin County, 878 F.2d 1406 (11th Cir. 1989), the Eleventh Circuit applied Malley to an affidavit that simply stated that the suspect "did . . . commit the offense of false report of a crime" to find that the affiant officer had committed a constitutional violation. Id. at 1408. The Court held that "such a conclusory affidavit clearly is insufficient to establish probable cause. The affidavit contains neither information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circumstances surrounding the alleged commission of the crime." Id. at 1408-09.

Defendant's affidavit is materially similar to the one that the Eleventh Circuit held facially unconstitutional in Garmon. Defendant merely stated in the affidavit that plaintiff "did with malice aforethought cause the death of [victim], a human being, by shooting said victim . . ." Doc. 68, Exs. 1, 2. This statement fails to articulate the basis for defendant's belief that plaintiff committed the alleged crime or that he had personal knowledge of the circumstances of plaintiff's involvement in the crime.

The arresting officers in Garmon and Malley, however, not only failed to set forth in their warrant affidavits sufficient facts to enable the magistrate to make an independent finding of probable cause, they *in fact* lacked any probable cause basis for making an arrest. The Court in Malley held that the appropriate question is "whether a reasonably well-trained officer in [defendant]'s position would have known that his affidavit failed to establish probable cause *and that he should not have applied for the warrant*." 475 U.S. at 345 (emphasis added). Inherent in this language is the proposition that the loss of qualified immunity requires not only that a reasonable officer would have found an affidavit to be lacking, but also that the entirety of the factual evidence available

to the officer fails to establish probable cause. To interpret the Court's ruling otherwise would unfairly penalize officers who, despite having developed necessary probable cause to arrest a suspect, have filed an insufficient affidavit because of deficient drafting skills. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (citing United States v. Watson, 423 U.S. 411, 417-424 (1976)). "In determining whether qualified immunity exists, the issue is not probable cause in fact but 'arguable' probable cause. Actual probable cause is not necessary for an arrest to be objectively reasonable." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990) (citation and internal quotes omitted). Therefore, even if the warrant was invalid, the arrest itself would not violate plaintiff's constitutional rights if there was arguable probable cause that plaintiff was the fourth accomplice in the murders.

Even when viewed in the light most favorable to plaintiff, had defendant included all of the material facts, a reasonable magistrate (or a reasonable officer) could have found probable cause for plaintiff's arrest. The Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978), held

that an officer violates the Fourth Amendment when he swears to false information knowingly or with reckless disregard for the truth in order to obtain a search warrant, where that false information is material to the finding of probable cause. Id. at 155-56; see also United States v. Martin, 615 F.2d 318, 327-29 (5th Cir. 1980) (extending Franks to arrest warrant cases and to material omissions). Therefore, "if an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause." Smith v. Deering, 880 F. Supp. 816, 825 (S.D. Ga. 1994) (citing Franks, 438 U.S. at 171-72). "Accordingly, in determining qualified immunity, a court should exclude any allegedly false material, add any omitted material and then determine whether the contents of the 'corrected affidavit'" meet the standard set forth in Malley. Id. at 825-26.

Defendant testified that he sought the arrest warrant for plaintiff based on (1) Natalie Strodder having identified plaintiff as being with Stewart and one of the victims two weeks prior to the murders and (2) Hanna and Stewart picking plaintiff out of a line-up. Doc. 68, at 17-18,

172.  Natalie Strodder, however, denies ever having recognized plaintiff's photograph or telling defendant that she did.  Id., Ex. D.  Plaintiff also notes that Hanna and Stewart had failed to identify plaintiff in previous line-ups, only picking his photograph when the prosecutor offered to remove the possibility of the death penalty in exchange for their help.  Doc. 60, ¶ 76.  Plaintiff, who is 5'11" and who had short hair and no tattoos in 1998, doc. 73, at 63-4, 67-8, did not match the descriptions of the fourth accomplice that Hanna or Stewart originally provided to defendant.  Id., ¶ 72, n.8.  Hanna and Stewart's accounts of plaintiff being the triggerman were not consistent with that of independent witnesses, who told defendant that Stewart had shot the two victims.  Id., ¶ 59.  Lastly, none of the eye-witnesses placed plaintiff at the scene of the murders, nor had defendant found any connection between plaintiff and the men involved with the murder.

Pursuant to this Court's ruling in Deering, a qualified immunity probable cause analysis may not include Natalie Stoddard's identification of plaintiff, as there is a material question of fact as to whether that occurred.  880 F. Supp. at 825-26.  So the Court must focus on the remaining facts—that after failing to identify plaintiff in previous

photographic line-ups, Hanna and Stewart, now with an incentive to identify their accomplice, picked out plaintiff's picture and told defendant that he was the gunman. Despite the fact that this identification conflicted with their previous descriptions of the accomplice and eye-witness accounts of the murder, Hanna and Stewart, independently of one another and with no evidence of being coerced by defendant,[5] picked plaintiff's photograph out of the line-up. As there is no evidence that defendant knew that these witnesses were lying, this positive identification of plaintiff by two participants in the murders is sufficient to establish arguable probable cause that plaintiff was in fact the fourth accomplice, even when considered in light of the other evidence that cast some doubt upon the identification. Defendant, therefore, is entitled to qualified immunity for seeking and obtaining the arrest warrant and effecting the arrest.

### 2.   **Preliminary Hearing**

---

[5]Plaintiff speculates that because defendant had noted that Stewart was going to "pick out Joyce" doc. 68, at 261, when he had no prior indication that Joyce's would be the photograph identified, he must have told Hanna and Stewart whom to pick and what to say, doc. 60, ¶81 n.6.  Besides this conjecture, however, plaintiff proffers no evidence that defendant acted improperly when obtaining the identification.

Defendant is entitled to absolute immunity for his testimony at plaintiff's preliminary hearing. In § 1983 cases, absolute immunity is accorded "to functions 'intimately associated with the judicial phase of the criminal process.'" Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999). The purpose of a preliminary hearing in Georgia is "to determine whether there is probable cause to believe the accused guilty of the crime charged, and if so, to bind him over for indictment by the grand jury." Gresham v. Edwards, 644 S.E.2d 122, 123 n.2 (Ga. 2007). It is a critical stage in the judicial proceedings that entitles the defendant to the presence of counsel. Id. Furthermore, police officers enjoy the same absolute immunity as lay witnesses in testifying at a judicial proceeding. Jones, 174 F.3d at 1281. Because a preliminary hearing is a judicial proceeding, defendant has absolute immunity from civil liability damages resulting from his testimony. See Scarbrough v. Myles, 245 F.3d 1299, 1305 (11th Cir. 2001) (holding that a police officer who testified at a preliminary criminal hearing in state court would be entitled to absolute immunity from liability in a subsequent civil rights suit for damages based on alleged perjured testimony during that proceeding). Plaintiff is also granted absolute immunity for his testimony during the grand jury

hearing. Strength v. Hubert, 854 F.2d 421, 426 (11th Cir. 1988). Defendant has absolute immunity from state law claims arising from his testimony as well. Williams v. Dykes, 317 S.E.2d 661, 662 (Ga. 1984) (reasoning that subjecting police officers to damages liability under 42 U.S.C. § 1983 for their testimony might undermine their contributions to the judicial process and the effective performance of their other public duties).

## C. Fourteenth Amendment Violation

Plaintiff asserts in his complaint that defendant violated plaintiff's right to due process by keeping him incarcerated for an extended period of time despite his protests of innocence. Docs. 1, 59. Plaintiff further alleges that defendant violated his due process rights by withholding exculpatory and impeachment evidence from the prosecutor. Doc. 59.

Defendant contends that plaintiff's due process rights were not violated because he "was afforded all the judicial due process allowed by state law": an arrest warrant pursuant to a probable cause determination by a magistrate judge, a preliminary hearing, and a grand jury indictment. Doc. 76. Furthermore, plaintiff was granted the

opportunity to fully review the state's evidence and prepare for trial. Id. Plaintiff has not alleged that any of these facts are untrue, nor do they relate directly to defendant, so it is clear that plaintiff's Fourteenth Amendment claim is not grounded in these particulars.

To the extent that plaintiff is alleging that his Fourteenth Amendment rights were violated by his continued detention despite his claims of innocence, the law is clear that malicious prosecution is the appropriate cause of action for seeking damages for confinement pursuant to legal process. See Calero-Colon, 68 F.3d at 4. "The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" Baker v. McCollan, 443 U.S. 137, 145 (1979). The Supreme Court has held that "the substantive due process component of the Fourteenth Amendment did not provide the constitutional source of a right to be free from malicious prosecution." Kingsland, 369 F.3d at 1227 n.17 (citing Albright v. Oliver, 510 U.S. 266, 274-75 (1994)). Rather, the right to be free from malicious prosecution is actually an expression of the Fourth Amendment right to be free from an unlawful seizure. See Whiting, 85 F.3d at 584 & n.4. Accordingly,

plaintiff's prolonged detention is not a violation of his Fourteenth Amendment rights.

Although plaintiff was given the opportunity to review the state's evidence, he alleges that defendant did not fully apprise the assistant district attorney of all relevant information known to him. "[I]ntentionally withholding exculpatory or impeachment evidence from the prosecutor with no reason to believe that the prosecutor had or knew of the evidence violated clearly established law under Brady v. Maryland, 373 U.S. 83 (1963)." McMillian v. Johnson, 88 F.3d 1554, 1566 (11th Cir. 1996); see also Walker v. New York, 974 F.2d 293, 299 (2nd Cir. 1992). "Investigators satisfy their obligations under Brady when they turn exculpatory and impeachment evidence over to the prosecutor." McMillian, 88 F.3d at 1567.

Brady and McMillian, however, "protect[] an accused's due process right to a fair trial" under the Fourteenth Amendment, as one cannot receive a fair trial when all exculpatory evidence has not been presented to the prosecutor. Id. Here, the charges against plaintiff were dismissed prior to the beginning of the trial. Therefore, it cannot be said that

plaintiff's right to a fair trial under the Fourteenth Amendment was violated pursuant to <u>Brady</u>.

As plaintiff has not stated a Fourteenth Amendment claim for which he may recover, summary judgment is appropriate.

### D.   Remaining Federal Claims

Plaintiff has not responded to defendant's motion for summary judgment on his allegations of conspiracy, nor has he provided any evidence that such a conspiracy exists.[6]  Accordingly, summary judgment should be granted on this claim.  <u>See</u> <u>Rowe v. City of Fort Lauderdale</u>, 279 F.3d 1271, 1283 (11th Cir. 2002) (requiring more than a mere scintilla of evidence of conspiracy to survive summary judgment).

Similarly, defendant requests summary judgment on plaintiff's "policymaker" and "supervisor" claims, which allege that defendant's actions were the result of some policy of the Liberty County Sheriff's Department.  Because plaintiff has failed to respond to these aspects of defendant's motion, the facts set forth by defendants must be treated as

---

[6]As the other three defendants and alleged co-conspirators have been voluntarily dismissed from this action, it is likely that plaintiff intends to abandon this claim.

uncontroverted. Plaintiff has not provided any evidence that these policies exist or that defendant is responsible for instituting or enforcing them, which defendant alleges he is not. Doc. 50. Summary judgment should be GRANTED as to these theories of liability for plaintiff's malicious prosecution action.

## IV. Conclusion

Because plaintiff has failed to establish that there exists a genuine issue of material fact requiring a trial, defendant's motion for summary judgment, doc. 49, should be GRANTED.[7]

**SO REPORTED AND RECOMMENDED** this _31st_ day of **August, 2007.**

**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

[7]Plaintiff's request for oral argument on defendant's motion for summary judgment, doc. 77, is DENIED.